IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| PAM MORGAN )<br>)<br>   Plaintiff, )<br>) | CIVIL ACTION |
| vs. )<br>) | FILE NO. |
| LIFE INSURANCE COMPANY )<br>OF NORTH AMERICA )<br>)<br>   Defendant. ) | |

## COMPLAINT

### I. JURISDICTION AND PARTIES

1.

This suit is brought and jurisdiction lies under the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. §1001, *et. seq.*

2.

Jurisdiction and venue are proper pursuant to 29 U.S.C. §1132.

3.

Plaintiff, Pam Morgan (hereinafter "Plaintiff"), is a citizen of the United States and of the State of Georgia.

4.

Defendant, Life Insurance Company of North America (hereinafter "Defendant"), is a foreign corporation doing business for profit in Georgia.

5.

Defendant may be served with process, pursuant to Rule 4 of the Federal Rules of Civil Procedure, by and through its registered agent, CT Corporation System, 289 S. Culver St., Lawrenceville, GA 30046.

6.

Defendant negotiated, maintained and administered the disability policy at issue in this Complaint.

## II.  STATEMENT OF FACTS

7.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 6 stated above.

8.

Plaintiff's employer, Colquitt Regional Medical Center, contracted with Defendant to provide long term disability benefits to its employees.

9.

At all times material to this action, an insurance policy for long term disability was in full force and effect, constituting a binding contract between Defendant Colquitt Regional Medical Center.

10.

Defendant pays long term disability insurance to covered employees of Colquitt Regional Medical Center under the Policy from its own assets.

11.

Colquitt Regional Medical Center offered long term disability coverage to its employees as part of an overall welfare benefit plan, as defined under ERISA.

12.

Plaintiff was an insured employee under Defendant's long term disability insurance policy.

13.

Defendant administered the long term disability plan and made all decisions as to benefits payable to eligible employees of Colquitt Regional Medical Center.

14.

Under Defendant's Policy, Disability is defined as:

"The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

1. unable to perform all the material duties of his or her Regular Occupation; and

2. unable to earn more than 80% of his or her Indexed Earnings from working in his or her Regular Occupation

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness:

1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and

2. unable to earn 60% or more of his or her Indexed Earnings.

15.

Plaintiff worked for Colquitt Regional Medical Center as a Office Coordinator for Physical Therapy.

16.

Plaintiff went out of work on October 8, 2016 due to a variety of conditions including but not limited to partial complex seizure disorder, lumbar radiculopathy,

sciatica, vitamin D deficiency, diabetes type II, diabetic neuropathy and left shoulder adhesive capsulitis amongst other conditions.

17.

Defendant found Plaintiff disabled and paid benefits up to June 5, 2019.

18.

Via letter dated December 23, 2019, Defendant denied benefits based upon a medical record review by a neurologist and an occupational medicine doctor who believed that Plaintiff could perform sedentary work.

19.

In the December 23, 2019 letter, Defendant acknowledged that Plaintiff had been awarded Social Security disability benefits.

20.

Indeed, it appears that Plaintiff was awarded Social Security benefits on or about January 6, 2017 and was represented by a third part vendor to which Defendant referred Plaintiff.

21.

Plaintiff also appears to have re-paid Defendant for any overpayment owing in this case.

22.

On May 5, 2020, Plaintiff attended a Neuropsychological Evaluation which found memory and attention problems due to neurologic issues.

23.

The Neuropsychologist opined that Plaintiff would not be able to function in a regular work setting and would be unreliable in attendance due to physical problems.

24.

On May 21, 2020, Plaintiff appealed the denial of continuing benefits via letter and enclosed the findings of the Neuropsychological Evaluation and all updated medical records.

25.

On June 17, 2020, Defendant acknowledged receipt of the appeal and sent a Social Security Consent for Release of Information form.

26.

On June 26, 2020, Plaintiff sent to Defendant the signed Social Security Consent for Release of Information form.

27.

On July 15, 2020, Defendant stated that it was waiting for the Social Security file.

28.

On July 31, 2020, Plaintiff informed Defendant that it should already have the Social Security file due to the fact that Defendant referred her to the entity that helped her obtain Social Security benefits.

29.

On September 10, 2020, Defendant asked for additional time to make a decision.

30.

On November 19, 2020, Defendant sent medical reviews to Plaintiff to have Plaintiff's doctors review and comment.

31.

On December 14, 2020, Plaintiff's doctor, Dr. Madhipatla, reviewed Defendant's report and stated that he did not agree with it stating quite clearly that Plaintiff cannot work eight hours a day and could not sustain attention due to neuropathy and other issues.

32.

On December 15, 2021, Plaintiff's doctor, Dr. Maria Bruzzone, responded to Defendant's doctor's report stating that she did not agree with it and stated that Plaintiff was not able to work due to cognitive slowing.

33.

On January 5, 2021 and January 19, 2021 Plaintiff sent these reports to Defendant.

34.

On February 9, 2021, Defendant denied benefits again and asked for a response from Plaintiff.

35.

On March 1, 2021, Defendant made a final decision stating that it believed that Plaintiff could perform sedentary work.

36.

On April 19, 2021, Plaintiff attended a Functional Capacity Evaluation which found that she was at the below sedentary physical capability level.

37.

On April 27, 2021, Plaintiff wrote Defendant enclosing the results of the

Functional Capacity Evaluation.

38.

On April 28, 2021, Defendant stated that the Functional Capacity Evaluation did not change its decision.

39.

Administrative remedies have been exhausted.

40.

Defendant's termination of Plaintiff's claim for long term disability benefits is a breach of the terms of the policy issued by Defendant.

### III.  CLAIM FOR RELIEF

### ENTITLEMENT TO LONG TERM DISABILITY BENEFITS

41.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 40 stated above.

42.

Plaintiff is entitled to long term disability benefits under Defendant's Policy for the following reasons:

    a.    These benefits are permitted under the plans;

    b.    Plaintiff has satisfied all conditions for eligibility for receipt of these benefits;

    c.    Plaintiff has not waived or otherwise relinquished her entitlement to these benefits.

43.

Defendant has refused to pay disability benefits despite substantial medical documentation. As a result of Defendant's failure to pay benefits to Plaintiff, she is entitled to relief as outlined below.

### IV.  RELIEF REQUESTED

WHEREFORE, Plaintiff requests judgment of this honorable Court against Defendant as follows:

(1) Find and hold Defendant owes Plaintiff disability benefits in the proper amount from on or about June 5, 2019 and continuing, plus the maximum allowable interest on all back benefits;

(2) Enjoin Defendant from any further prohibited acts against Plaintiff;

(3) Award Plaintiff attorneys' fees, including litigation expenses, and the cost of this action; and

(4)    Grant other and further relief as may be just and proper.


This the  10th  day of May, 2021.

ROGERS, HOFRICHTER & KARRH, LLC


 *s/Heather K. Karrh*
HEATHER KENDALL KARRH
Ga. State Bar No. 408379
225 S. Glynn St., Ste. A
Fayetteville, GA 30214
(770) 460-1118
hkarrh@rhlpc.com

Attorneys for Plaintiff